# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| JEFFERY RODEBACK, and KAP, LLC, as trustee,<br><br>Plaintiff,<br><br>v.<br><br>UTAH FINANCIAL, BAC HOME LOANS SERVICING, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, RECONTRUST, and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Defendants. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 1:09-cv-00134-TC<br><br>Judge Tena Campbell |

Plaintiffs Jeffery Rodeback and KAP, LLC, claim that Defendants BAC Home Loans Servicing, LP (BAC), Mortgage Electronic Registration Systems, Inc. (MERS), Federal National Mortgage Association (FNMA), and ReconTrust have violated various provisions of federal and state law concerning the servicing and foreclosure of a mortgage. Defendants have moved to dismiss the complaint arguing that Plaintiffs have failed to state a claim. The court agrees with Defendants and GRANTS Defendants' motion.

**BACKGROUND**

Mr. Rodeback obtained a loan for $306,0000, which he secured with a trust deed on a piece of property. On May 5, 2009, after Mr. Rodeback failed to make payments on the loan, MERS initiated foreclosure proceedings under the trust deed. Mr. Rodeback transferred title to the property to KAP, LLC, on August 28, 2009, but he remained the borrower on the loan. On October 6, 2009, Mr. Rodeback sent several letters to BAC Home Loans, the company servicing his mortgage, including a letter with a number of requests for information about the servicing of

his loan.  He initiated this lawsuit on October 14, 2006, claiming that BAC did not respond to his request for information, that MERS did not have authority to foreclose, and that the note and the Trust Deed were split when the note changed ownership.

**ANALYSIS**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  Conclusory allegations are allegations that "do not allege the factual basis" for the claim.  Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).  See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added).  The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  And although all reasonable inferences must be drawn in the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

Qualified Written Request

Plaintiffs first allege that BAC violated the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2605(e), by failing to respond to a qualified written request (QWR). Defendants contend that Plaintiffs did not submit a QWR, but if they did, that Defendants responded to it as required by law. Under § 2605(e)(1)(A), a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan . . . ." A QWR must also

> Include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B)(ii). A QWR relates only to the "servicing" of the loan, which is defined as requests relating to the "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan." Consumer Solutions Reo, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (holding that a letter disputing the validity of the loan rather than the servicing was not a QWR); see also MorEquity, Inc. v. Naeem, 118 F. Supp.2d 885, 900-01 (N.D. Ill. 2000) (holding that a letter alleging a forged deed and irregularities in recording did not relate to the servicing of the loan). If the lender fails to comply with a QWR, the borrower is entitled to "any actual damages to the borrower as a result of the failure; and . . . any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed

3

$1,000." 28 U.S.C. § 2605(f)(1).

In this case, counsel for Mr. Rodeback sent a letter to BAC on October 6, 2009, that Mr. Rodeback contends is a QWR. This letter requested that BAC provide the following:

> 1. All application, disclosure and closing documents, including the promissory note.
> 2. History of the monthly principal, interest and escrow payments since inception. For each payment indicate the date received and the date posted.
> 3. The amount, payment date, purpose, and recipient of all expenses charged or assessed to my mortgage account since inception (other than principal, interest, and escrow fees). For each payment indicate the date received and the date posted.
> 4. The balance currently owing separately listing any unpaid principal, interest, and escrow charges.
> 5. The amount, payment date, purpose, and recipient of all escrow account items, including, but not limited to taxes, water and sewer charges, and insurance premiums, charged and/or assessed to my mortgage account.
> 6. The current balance in the escrow account.
> 7. The current interest rate on my mortgage account.
> 8. If you are not the current holder of the note, please provide the name, address, and other contact information of the holder, including a beneficiary statement and indicate your relationship to this entity.
> 9. The date you started servicing the mortgage account, and if you acquired the servicing rights from another servicer, state the name of the prior servicer und the effective date of the transfer of servicing.

(Ex. C to Mot. Dismiss Am. Compl.)[1] BAC responded to the portions of the letter that relate to the servicing of the loan on January 14, 2010, more than sixty days after the request was made.

Defendants argue that even though their response was late, the QWR was not proper under the statute because it did not identify any servicing error. But the statute does not require such an allegation. Rather, it directs the borrower to provide either the reason the borrower believes the account is in error or to provide enough information that the servicer can respond to

---

[1] Although Plaintiffs did not attach a copy of the letter to the Complaint, where a document is referred to in the complaint and is central to a claim, an indisputably authentic copy of the document may be considered in a motion to dismiss. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

4

the QWR.  See 28 U.S.C. § 2605(e)(1)(B)(ii).

Defendants also argue that Plaintiffs do not have a claim because they did not allege actual damages.  RESPA requires borrowers to show actual damages as a result of a failure to comply with its provisions and allows the court to provide the borrower with additional damages in the case of a pattern or practice of noncompliance.  28 U.S.C. § 2605(f)(1); see also Kee v. Fifth Third Bank, No. 2:06-cv-00602, 2009 U.S. Dist. LEXIS 21502 at *32 (March 18, 2009), Ricotta v. Ocwel Loan Serv., LLC, No. 06-cv-01502, 2008 U.S. Dist. LEXIS 13816 at *16-18 (February 22, 2008) (discussing RESPA's actual damages requirement).  In this case, Plaintiffs have not alleged any actual damage resulting from the failure to respond or delay in responding to the QWR.

Plaintiffs do not ask the court for any actual damages for the failure to respond to the QWR, nor do they allege a pattern and practice of noncompliance.  Additionally, Plaintiffs filed their lawsuit alleging failure to respond to their QWR only eight days after sending the request letter, long before the statutory time for response from the loan servicer had run.  Instead of asking for damages under RESPA, Plaintiffs ask the court to cancel the Trust Deed, end the foreclosure proceeding, and declare that none of the Defendants have any interest in the property at issue in the case.  Although Plaintiffs respond to the motion to dismiss by claiming that the foreclosure action, notice of default, current lawsuit, and mental anguish are their actual damages, these damages are not the result of Defendants' delay in responding to the QWR.  Rather, they flow from Defendants' actions occurring after Defendants' tardy response.

Split Note and Trust Deed

Plaintiffs argue that the Trust Deed securing the mortgage on the property is invalid

because the underlying note was split from the Trust Deed when the note was assigned separately from the Trust Deed. As a result of this split, Plaintiffs also seek to extinguish the interest of MERS, FNMA, or any other party claiming interest in the property pursuant to the note or trust deed through a quiet title action. Defendants argue that under Utah law, the note cannot be assigned separately from the trust deed. They point to the following statutory language: "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Utah Code Ann. § 57-1-35. In other words, each successor to the note receives the benefit of the security. Utah Code section 57-1-35 makes it impossible to split the note from the security interest. Therefore, the Trust Deed is valid even if the note changed ownership.

MERS' Authority to Foreclose

Plaintiffs contend that MERS does not have authority to foreclose the trust deed. Defendants counter that the Trust Deed specifically authorizes MERS to foreclose. The trust deed specifies that "MERS . . . has the right: to exercise any or all of [the interests granted by the Borrower through the trust deed], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender, including, but not limited to, releasing and canceling this Security Instrument." (Trust Deed 2-3 (attached as Ex.B to Mot. to Dismiss Am. Compl.)) In Burnett v. Mortgage Electronic Registration Systems, Inc., No. 1:09-cv-00069, 2009 U.S. Dist. LEXIS 100409 at *10-12 (October 27, 2009), the court interpreted an identical provision in a trust deed to mean that MERS had authority under the trust seed to initiate foreclosure proceedings, appoint a trustee, and to foreclose and sell the property. Here, and for the same reasons the court outlined in Burnett, MERS has the authority to foreclose on the Trust Deed.

For the above reasons the court GRANTS the motion to dismiss BAC, MERS, FNMA, and ReconTrust.

DATED this 13th day of July, 2010.

BY THE COURT:

_____
TENA CAMPBELL
Chief Judge